UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WENDY BOBAK, | ) |
| Plaintiff, | ) |
| | ) No. 16 C 10397 |
| v. | ) |
| | ) Judge Sara L. Ellis |
| BRIGHT STAR AMBULANCE, INC., | ) |
| Defendant. | ) |

## OPINION AND ORDER

Wendy Bobak brings this discrimination suit against her former employer Bright Star Ambulance, Inc. ("Bright Star") claiming a single count of discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq*., as amended including the Pregnancy Discrimination Act of 1978 ("PDA"), 42 U.S.C. § 2000e(k). After the close of fact discovery, Bright Star has filed a motion for summary judgment. The Court finds that there is a triable issue of material fact and denies Bright Star's motion.

## BACKGROUND[1]

Bobak worked for Bright Star from October 2014 until April 8, 2016. Her supervisor, John Bailey described her as a model employee. While Bright Star initially hired her as an EMT Basic, Bobak began to take on supervisory responsibilities in approximately January 2015, and Bailey informed all Bright Star employees that Bright Star promoted Bobak to supervisor in July 2015. Bobak's duties evolved; in addition to her responsibilities as an EMT Basic, Bobak began to take care of day-to-day operations, which included ensuring the ambulances were operating,

---

[1] The facts in this section are derived from the Agreed Statement of Material Facts. The Court has considered the parties' objections to the statements of fact and supporting exhibits and included in this background section only those portions of the statements and responses that are appropriately presented, supported, and relevant to resolution of the pending motion for summary judgment. All facts are taken in the light most favorable to Bobak, the non-movant.

filling in for absent employees, handling inventory, reviewing paperwork, and training new EMTs.  On top of these new tasks, Bailey asked Bobak to perform extra marketing duties.

Bobak learned that she was pregnant in October 2015.  She informed Bailey of her pregnancy in either December 2015 or January 2016.  Bobak was due on June 16, 2016 and planned to work until she went into labor, then take six weeks of leave.  She never changed this plan.  Bobak continued working, fulfilling both her EMT Basic duties and her additional supervisory duties.  According to Bailey, Bobak worked "a lot more hours" than most of Bright Star's other EMTs.

In February 2016, while working a 24-hour shift, Bobak encountered a 600-pound patient.  Unlike day car shifts, where EMT Basics assisted pre-determined patients according to a set schedule, Bright Star required EMT Basics on the 24-hour shift to be available for a call at any time and EMT Basics did not know beforehand which patients they would be assisting.  Around February 2016, Bobak asked Bailey if she could have a full-time office position later in her pregnancy.  The parties disagree over the reason Bobak initiated this conversation.  According to Bobak, she did not want to work the 24-hour shifts later in her pregnancy because of the uncertainty regarding the patients she would encounter.  She asserts that she did not express the same concern with working the day car shifts.  According to Bailey, Bobak expressed concern with working on an ambulance in any capacity later in her pregnancy.

The parties agree that in February 2016, Bobak and Bailey discussed the idea of her moving to an office position near the end of her pregnancy.  According to Bobak, this position would have consisted of her continuing to do her supervisory duties and expanding the marketing duties Bailey had previously asked her to do.  Bailey expressed to Bobak that he thought this move was a good idea, and that he thought there would be no problem with it, but that it would

2

only be 40 hours per week, and that Sam Hejja, the owner of Bright Star, was the final decisionmaker on this issue. Bobak was excited about the potential move. Although Hejja was the final decisionmaker, Bailey did not approach Hejja about the temporary change in position in February.

In late March 2016, Bobak had another conversation with Bailey about the position change. The parties disagree about what was said. Bailey testified that Bobak told him she would no longer be working on an ambulance and that her statement was not limited to 24-hour shifts, but included day car shifts as well. Bobak, however, testified that her statement was limited to 24-hour shifts. Though they had different ideas about the meaning of her "last day" in late March, both Bobak and Bailey understood that her "last day" would be April 8, 2016. Only then did Bailey introduce the idea to Hejja, who informed Bailey that he would not approve Bobak's request. Bailey did not inform Bobak. Bailey asked Hejja again on April 6, 2016, but Hejja had not changed his mind and again, Bailey did not inform Bobak.

On April 8, 2016, Bailey had a conversation with Bobak during which he informed her that there was no full-time office position available. Bobak testified that Bailey also told her that she was being let go, that she could apply for unemployment, that he had requested a severance package for her, and that Hejja had declined that request. Bobak was aware, however, that she could return to work at Bright Star after she had her baby.

Before Bobak's last day, Bailey had created a plan to have a male employee named Paul move from handling the day car shifts to handling Bobak's 24-hour shifts. Bailey testified that Bright Star filled Paul's day car responsibilities with "whoever [Bright Star] could get to fill in." Bobak testified that she would have accepted taking over Paul's position if Bright Star had offered it to her.

In the summer of 2016, Bobak filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). Hejja was personally involved in preparing Bright Star's response to Bobak's EEOC Charge of Discrimination. Bright Star's Position Statement to the EEOC states that Bobak "made her decision to quit the company." During his deposition, Hejja testified that Bobak went on maternity leave because Bobak "said she could not handle the position anymore, she could not do her position anymore."

On November 7, 2016, Bobak filed this discrimination action against Bright Star.

## LEGAL STANDARD

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. To determine whether a genuine issue of fact exists, the Court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed. R. Civ. P. 56 & advisory committee's notes. The party seeking summary judgment bears the initial burden of proving that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In response, the non-moving party cannot rest on mere pleadings alone but must use the evidentiary tools listed above to identify specific material facts that demonstrate a genuine issue for trial. *Id.* at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the Court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

## ANALYSIS

I.   **Discrimination on the Basis of Plaintiff's Pregnancy**

Title VII makes it unlawful for an employer to discriminate against any individual because of the individual's sex. *Hunt-Golliday v. Metropolitan Water Reclamation Dist.*, 104 F.3d 1004, 1010 (7th Cir. 1997). The PDA expanded Title VII to prohibit employment discrimination "because of or on the basis of pregnancy, childbirth, or related medical conditions." 42 U.S.C. § 2000e(k). An employer violates the PDA whenever pregnancy is a motivating factor for an adverse employment decision. *Hunt-Golliday*, 104 F.3d at 1010. Traditionally, "there are two ways of proving such a claim: the 'direct' method of proof and the 'indirect' method of proof." *Hitchcock v. Angel Corps, Inc.*, 718 F.3d 733, 737 (7th Cir. 2013) (citations omitted). "Under the direct method, a plaintiff must provide either direct or circumstantial evidence that the employer had a discriminatory motivation, and under the indirect method, a plaintiff must satisfy the well-worn requirements of *McDonnell Douglas Corp. v. Green*." *Id*. (citations omitted). The Seventh Circuit has "recently discarded the distinction between direct and indirect methods of proof in employment discrimination cases and clarified that all evidence must be evaluated as a whole." *Lauth v. Covance, Inc.*, 863 F.3d 708, 715 (7th Cir. 2017) (citing *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765-66 (7th Cir. 2016)). The simple question now "is whether a reasonable jury could determine that [plaintiff's protected class] was the cause of his termination." *Id*. The parties in this case contest two factual issues regarding this integral question: (1) whether Bright Star terminated Bobak, forced her to take maternity leave, Bobak took maternity leave willingly, or Bobak quit of her own accord; and (2) if Bright Star did terminate Bobak or subjected her to an adverse employment action, whether that action was motivated by Bobak's pregnancy.

## A. A Reasonable Jury Could Conclude that Bright Star Terminated Bobak

Bobak testified in her deposition that Bailey told her on April 8, 2016, that she was "let go," that she could file for unemployment, and that he requested a severance package for her but Hejja denied his request. Relying on this statement from Bobak, a jury could reasonably believe that Bright Star fired Bobak.

Bright Star argues that, under *Andrews v. CBOCS West, Inc.*, Bobak's claim for termination must fail. 743 F.3d 230 (7th Cir. 2014). Bright Star submits that *Andrews* stands for the proposition that "in the absence of evidence that an employee was involuntarily relieved of a job that she had expressed a desire to keep, an employee's assertion that she was terminated must fail." Doc. 48 at 13; Doc. 54 at 4; *Andrews*, 743 F.3d, at 236. However, *Andrews* involved a computerized and automated termination triggered by Andrews' extended absence from her workplace. *Id.* ("The Cracker Barrel computer system automatically changes the employment status of employees who do not show up for work for a period of three weeks, listing them as 'terminated'"). In *Andrews*, a computer program allegedly terminated the plaintiff as opposed to here, where Bobak's supervisor allegedly told her she was being "let go." The computer program did not inform Andrews that she could file for unemployment or that the computer program had unsuccessfully requested a severance package for her, unlike Bobak's testimony in this case. In the absence of such evidence of termination, the Seventh Circuit asked Andrews for more. There is no such need in this case.

Bright Star also argues that it did not terminate Bobak because she knew she could come back to work after she had her baby. However, the distinction between an employer firing a pregnant employee and an employer forcing a pregnant employee who remains able to work to take leave is inconsequential here. Both are prohibited under the PDA. *Maganuco v. Leyden*

6

*Community High School Dist. 212*, 939 F.2d 440, 445 (7th Cir. 1991) ("The PDA prohibits employers from forcing pregnant women who remain able to work to take leaves unless the employer can show that the leave is necessary because the condition of pregnancy is incompatible with continued employment"[2]). By forcing Bobak to take leave until she gave birth, Bright Star effectively fired her to then rehire her when she is no longer pregnant. Bright Star itself, labels this a "temporary termination." Doc. 48 at 14. Thus, Bright Star's argument that Bobak amends her complaint by asserting this "temporary termination" theory falls flat. Bobak complained Bright Star terminated her. She did not, and does not, need to specify whether that termination was permanent or temporary.

Bright Star further asserts that it did not fire Bobak; rather, Bright Star states that Bobak quit once she refused to work the 24-hour shifts, which Bright Star claims were required as part of her job. Bright Star submits that Bobak acknowledges that these shifts were required as part of her job, and cites to Paragraph 10 of the Agreed Statement of Material Facts, which states:

> "Throughout her tenure as an EMT with Bright Star, Bobak worked both the Day Car shift and the 24-hour shift. When asked during her deposition, Bobak was unable to put a percentage between the time she spent working 24-hour shifts and the time she spent working day cars in any given week. Per Bobak, whether she worked a 24-hour shift or a day car depended largely on Bright Star's needs on any given week."

Doc. 47 ¶ 10 (citations omitted). The Court sees no assertion or acknowledgement that Bright Star required Bobak to work 24-hour shifts. Nor does the Court find any support for this assertion or acknowledgment in the Bright Star Job Description for EMTs, or any of the job

---

[2] The parties agree that Bobak testified "that she never informed Bailey that she could no longer work as an EMT… that she never believed that she was unable to perform the duties of an EMT… that she was in fact able to perform those duties… that she was ready and willing to continue working until she went into labor… and that she never told Bailey that she did not feel comfortable doing her job due to her pregnancy." Doc. 47 ¶ 98. Bright Star does not argue in either its Memorandum of Law supporting its motion, or its Reply that Bobak could not perform her job because of her pregnancy.

listings. Doc. 47-4 at 52-55, 64-67. In fact, three of the four job listings boast about "flexible hours." *Id.* The Court finds that a reasonable jury could conclude that 24-hour shifts were not a strictly required element of the EMT position, and therefore, Bobak's request to come off the 24-hour shifts was not a refusal to perform a required part of her job or tantamount to her quitting.

Thus, the Court finds that a reasonable jury could conclude that Bobak did not quit, did not refuse to perform an essential part of her job, and that Bright Star terminated Bobak.

### B. A Reasonable Jury Could Conclude that Bobak was Discriminated Against Because of her Pregnancy

Bright Star argues that, even if it terminated Bobak or subjected her to an adverse employment action, it had no discriminatory animus towards Bobak. Bright Star repeatedly offers a straw man for Bobak's claim of discrimination: "Bobak's claim hinges entirely on her circular argument that Bright Star discriminated against her because she was allegedly fired." Doc. 48 at 14. Furthermore, Bright Star submits that Bailey and Hejja held no animosity towards Bobak because of her pregnancy and that Bailey even congratulated Bobak when she told him the news.

However, not every claim of discrimination requires animosity. The question is simply whether the plaintiff's protected class was the cause of her termination. *Lauth*, 863 F.3d at 715. The Court has found that a reasonable jury could conclude that Bright Star terminated Bobak, and that termination occurred while she was pregnant. Bright Star readily admits they were willing to rehire Bobak once she was no longer pregnant. There is nothing in the record to suggest that Bobak's pregnancy inhibited her ability to do her job and continue being a model employee; in fact, Bobak testifies affirmatively that her pregnancy did not impair her ability to perform, and yet a reasonable jury could find that she was terminated. This is the very essence

8

of a pregnancy discrimination claim.  The Court finds that a reasonable jury could conclude that Bright Star discriminated against Bobak because of her pregnancy.

## CONCLUSION

For the foregoing reasons, the Court denies Bright Star's motion for summary judgment [46].

Dated: February 12, 2019

_____
SARA L. ELLIS
United States District Judge